1   Oxana Kozlov, Esq.; SBN 209210
    649 Dunholme Way
2   Sunnyvale, CA 94087
    Phone: (408) 431-4543
3

4   Attorney for Plaintiff Irene Anokhin

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   IRENE ANOKHIN, an individual,          )  CASE NO.: 2:10-cv-00395-MCE-EFB
                                            )
12                Plaintiff                 )  **(JURY TRIAL REQUESTED)**
                                            )
13                vs.                       )  SECOND AMENDED VERIFIED
                                            )  COMPLAINT
14   BAC HOME LOAN SERVICING, LP;           )    1.  WRONGFUL FORECLOSURE
     MORTGAGE ELECTRONIC REGISTRATION       )        PROCEEDINGS;
15   SYSTEMS, INC. and DOES 1 through 100,  )    2.  QUITE TITLE;
     inclusive,                             )    3.  RESPA VIOLATIONS;
16                                          )    4.  FOR VIOLATION OF CALIFORNIA
                                            )        BUSINESS AND PROFESSIONS
17                Defendants                )        CODE SECTION 17200 ET SEQ;
                                            )    5.  INTENTIONAL INFLICTION OF
18                                          )        EMOTIONAL DISTRESS;
                                            )    6.  TO VOID CONTRACT;
19                                          )    7.  TO VOID AND CANCEL DEED OF
                                            )        TRUST;
20                                               8.  FOR VIOLATION OF CALIFORNIA
                                                     CIVIL CODE SECTION 2923.5.
21                                               9.  FOR UNFAIR DEBT COLLECTION
                                                     PRACTICES.
22

23

24

25

26

27

28
                                    -1-
     SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## I.

## INTRODUCTION

The instant matter arises from the putative "financing" of the purchase of Homeowner's home from which all named defendants and one or more of the Doe defendants profited or expected they would profit not only from interest to be earned from the putative loan over time but by concealing from Homeowner oppressive terms set forth in documents.  Included amongst the ostensible loan documents are documents which, by their own terms, establish they were something other than what they were purported to be and, therefore, were void ab initio as the tender and execution of such documents constituted fraud in the execution.  After some missed payments under the Note, in October 2007, Homeowner agreed to and executed a Deed in Lieu in favour of Countrywide Home Loans, Inc. ("CHL") per its request, transferring to CHL all her right, title and Interest in the subject property, however, unbeknownst to her, CHL proceeded with a foreclosure sale.  Later, she was confronted with the knowledge that she is still an owner of the property and presented with the alleged increased balance due under the Note and outrageous foreclosure-related charges.  As a final insult, rather than try and negotiate new loan terms with Homeowner as required by California law, defendants in this matter are attempting to unlawfully sell Homeowner's home at a fraudulent trustee's sale which is little more than further evidence of the impunity with which defendants treated and continue to treat California's decisional and statutory law.  Upon learning of the manner in which she had been victimized by those who owed her fiduciary duties and exhausted after fruitless attempts to find out the true status and ownership of her loan Homeowner initiated the instant action.

## II.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

1.      Plaintiff, Irene Anokhin ("Homeowner") is now, and at all times relevant to this action was, a resident of the city of San Diego, County of San Diego, State of California.  At all times relevant to this action, Homeowner has owned real property commonly known as 1847, Spaletta Way, Sacramento, California 95835 (the "Property").  A legal description of the property is set forth in **Exhibit A**, attached hereto and by this reference made a part hereof.

2.      Homeowner is informed and believes and upon such information and belief alleges that Defendant BAC Home Loan Servicing, LP ("BAC") is a subsidiary of Bank of America, N.A., a national banking association which is authorized to be business in California.  BAC is believed to

1    be a successor by merger to CHL and a servicer of Homeowner's loan.

2        3.      Homeowner is informed and believes and upon such information and belief alleges

3    that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a

4    corporation, incorporated in the state of Delaware that has never registered with the Secretary of

5    State of California and therefore, may not transact business in the state of California.  Homeowner

6    is further informed and believes and upon such information and belief alleges MERS sells

7    "Memberships" as well as a variety of services to mortgage loan originators and lenders who have

8    or are doing business in the State of California.  MERS "registers" mortgage loans originated or

9    funded by such parties.  MERS is not and has never provided consideration to Homeowner or,

10   based upon Homeowner's information and belief, to ANY borrower in the state of California and

11   thus MERS could never properly be the beneficiary under ANY California Deed of Trust.  Further,

12   MERS has sold and continues to sell its services and charge "members" for such services in the

13   state of California.  MERS is named as the "nominal beneficiary" in the putative Deed of Trust

14   signed by Homeowner to secure the loan used to purchase the Property.  The Deed of Trust names

15   American Wholesale Lender ("AWL") as a Lender and based on the foregoing AWL is believed to

16   have been the original Lender under the Note and the Deed of Trust and original Note Holder.  The

17   chain of title becomes obscure at that point, but the Note is believed to have been assigned to first

18   CHL and later resold on the secondary market through bundling and securitization process.  The

19   present true beneficiary under the Note is believed to be unknown and unascertained at the

20   moment.

21       4.      Homeowner is ignorant of the true names and capacities of defendants sued herein

22   as DOES 1 – 100 inclusive, and therefore sues these defendants by such fictitious names.

23   Homeowner will amend this complaint to allege their true names and capacities when ascertained.

24   Homeowner is informed and believes and based thereon alleges each of the fictitiously named

25   defendants is responsible in some manner for the injuries to Homeowner alleged herein and that

26   such injuries as herein alleged were proximately caused by such defendants.

27       5.      Homeowner is informed and believes and thereon alleges that at all times herein

28   mentioned *each of the defendants was the agent and employee of the remaining defendants*, and
     in doing the things hereinafter alleged, was acting within the course and scope of such agency and
     employment.

         6.      Homeowner is informed and believes and upon such information and belief alleges

-3-

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

that when an instrument named a Deed of Trust includes language intended to materially vary long standing California law it is a legal nullity.

7.      Homeowner alleges that the Deed of Trust she executed was not, in fact, a Deed of Trust but instead was, inter alia, an attempt to vary by contract longstanding California law, without ANY disclosure of the same to Homeowner.  Homeowner is informed and believes and upon such information and belief alleges that California law expressly states that ONLY the party with the right to enforce the terms of the Note ostensibly secured by a Deed of Trust is, in fact, the beneficiary of such Deed of Trust without regard to any statement to the contrary set forth in the Deed.

8.      Homeowner is informed and believes and thereupon alleges that a Deed of Trust conveys legal title to real property from the Trustor or Grantor of such Deed of Trust to the Trustee named in such Deed of Trust for the Beneficiary of the Deed of Trust and that such Beneficiary is, in fact, the party with the right to enforce the Note or other instrument which the Deed of Trust purports to secure.  Homeowner is further informed and believes and upon such information and belief alleges that a Deed of Trust is, in fact, a Trust instrument.  Homeowner is informed and believes and upon such information and belief alleges that a trust instrument must have an ascertained or ascertainable beneficiary and, lacking the same, is a legal nullity and *void ab initio*. Homeowner is informed and believes and thereupon alleges that where no ascertained or ascertainable Beneficiary is indentified in a Trust instrument such instrument necessarily violates the Rule against Perpetuities and, as such, is a legal nullity.

9.      Homeowner alleges the Deed of Trust that she executed in connection with the finance of her purchase of the Property is a legal nullity and *void ab initio*.

10.     Accordingly, each and every document predicated upon the Deed of Trust in any way, shape or form was likewise *void ab initio*.

11.     Homeowner alleges that on or about April 10, 2006 she was asked to execute a number of documents which purported to constitute the documents for the loan she had been given to finance the purchase of the Property.

12.     Homeowner was not provided with any meaningful opportunity to read or review the putative documents and, in fact, was tacitly discouraged from doing so as no representative of the lender identified the putative loan documents or was otherwise present when Homeowner was asked to sign the documents.  Homeowner alleges that the "signing" of the documents took

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

approximately 15 minutes and was conducted by a Notary Public who simply instructed Homeowner, over and over as to each and every document, "sign here."

13.     Homeowner believes that on or around October 22, 2007 after she missed a few monthly payments, she was asked and, per CHL's request executed, properly notarized and delivered to CHL a Deed in Lieu, granting, assigning and transferring to CHL all of her rights and interest in the Property.  She was not contacted by CHL with any follow-ups or additional requests related to the Deed of Lieu and reasonably believed that the matter was resolved to everyone's satisfaction.

14.     In spite of the fact of this full grant, assignment and transfer, unbeknownst to Homeowner, and further in contempt of long standing California statutory and decisional law, Recontrust, purportedly acting on behalf of the putative "beneficiary," Defendant MERS, caused to be filed a first Notice of Default as to the Property dated November 09, 2007, which indicated amount due under the Note to be $14,329.56.  A true and correct copy of such Notice is attached hereto as **Exhibit B.**  This Notice of Default was recorded about two weeks after Homeowner executed, notarized and mailed to CHL a requested Deed in Lieu.  **At no time was she informed that her Deed of Lieu was not accepted or that the Notice of Default would be recorded or was** recorded against the Property.

**15.**     Thereafter Recontrust caused to be filed a Notice of Trustee's Sale as to the Property which shows a sale date of March 05, 2008.  A true and correct copy of the first page of such notice is attached hereto as **Exhibit C**.  The Trustee under the subject Deed of Trust was purportedly substituted when Recontrust Company (not to be confused with Recontrust Company, N.A.) was designated as a new Trustee by Defendant MERS, who represented itself as the **present beneficiary** under the Deed of Trust and executed the form as Beneficiary or Investor.   See a copy of the recorded "Substitution of Trustee" attached hereto as **Exhibit D** and incorporated by reference herein.

16.     Homeowner is unaware as to what happened next and why the Property was not sold on the trustee's sale but some time in Fall 2008 she was contacted by CHL agents who informed her to her utmost surprise that she is still listed as a Property owner and still owes under the Note, which she thought she long transferred and assigned under the terms of the executed by her Deed in Lieu.

17.     She continued to receive frequent improper calls from CHL and later BAC agents

demanding payments under the Note.  She specifically disputed any amounts that allegedly accrued on her account after she executed and mailed to CHL the Deed in Lieu.  She also requested investigation of the issue and potential loan modification, all to no avail.  This time Recontrust Company, N.A. (not Recontrust Company, purported substituted trustee), and on or about May 15, 2009, purportedly acting on behalf of the putative "beneficiary," Defendant MERS, caused to be filed the second Notice of Default as to the Property, which this time indicated this time amount due under the Note to be $64,735.08.  A true and correct copy of such Notice of Default is attached hereto as **Exhibit E**.  Homeowner was never provided with a reasonable explanation of why she owes this particular amount, except that she believes that some $13,000 was charged to pay for purported insurance for the Property, something she never been informed about or agreed to.

18.     On or about  July 20, 2009, Homeowner sent to Defendant BAC a Qualified Written Request Letter ("QWR") under Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), requesting information regarding her loan current ownership and detailed accounting of the amounts allegedly due under the loan.  A copy of the QWR letter, along with the confirmations of its receipt by Defendant BAC on July 24, 2009, is attached hereto as **Exhibit F**.  No response to her QWR letter has been received up to this date.

**III.**

**FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE PROCEEDINGS, TO SET ASIDE THE NOTICE OF DEFAULT AND NOTICE OF SALE**
**(Against Defendants BAC and MERS)**

19.     California Civil Code §§ 2924 through 2924(k) provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.  This comprehensive statutory scheme has three purposes: *"(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a **properly** conducted sale is final between the parties and conclusive as to a bona fide purchaser."* (Emphasis added). (*Melendrez v. D & I Investment, Inc*. (2005) 127 Cal.App.4th 1238, 1249–1250 [26 Cal. Rptr. 3D 413]).

20.     The foreclosure proceedings at issue fail on all three prongs.  As discussed above, they are not conducted by a true creditor/beneficiary and thus the first prong is not satisfied.  In addition, these proceedings cannot ensure that the conducted sale will be final and conclusive as to a potential bona fide purchaser, which is required by the third prong.  As it will be abundantly clear

-6-

from the discussion directly below, the contemplated foreclosure sale at issue could not be conducted properly under the current statutory regime and the terms of the Deed of Trust. Thus, such an improper foreclosure would be in violation of the third prong and in addition definitely result in wrongful loss of property, from which debtor/trustor shall be protected as provisioned in second prong. Needless to say, protection of debtor (Homeowner) from wrongful loss of the Property was not even in the cards as defendants could not care less about Homeowner's interests and, moreover, made everything possible to hide the true beneficiary from the Homeowner and deter her from establishing direct contact and/or asserting any meaningful defenses against the true beneficiary.

21.     Defendants were not the proper parties and were and are not authorized to initiate and conduct the foreclosure sale at issue under California law. Homeowner hereby alleges that Defendants MERS and BAC are not the holders of the Note in due course as would be required pursuant to the provisions of Article 3 or 9 of the California Commercial Code to enforce the Note. Since none of the named Defendants is the holder in due course of the Note, no such Defendant has authority, pursuant to California Civil Code Section 2924(a) (1) (C), to state a default exists under the Note or the Deed of Trust which purportedly secures such Note.

22.     Furthermore, California Civil Code § 2924c provides that, among other things, a proper Notice of Default shall contain the contact information for the current beneficiary or mortgagee of the loan[1]:  California Civil Code § 2924f requires that the Notice of Sale contain "the name and address of the beneficiary at whose request the sale is to be conducted."  Further, California Civil Code § 2932.5 governs the power of sale under an assigned mortgage, and provides that the power of sale can only vest in a person entitled to money payments:

          Where a power to sell real property is given to a mortgagee, or other encumbrancer,

---

[1]  "To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

_____
**(Name of beneficiary or mortgagee)**
_____
(Mailing address)
_____
(Telephone)"
(emphasis added). Cal. Civ. Code § 2924c.

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

in an instrument intended to secure the payment of money, the power is part of the security and vests in any person *who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded*."

(emphasis added). See Cal. Civ. Code § 2932.5.

23. Those California sections governing non-judicial sale shall be strictly construed. Read together, these sections are clearly meant to protect borrower/consumer rights by introducing certain transparency requirements. In other words, compliance with these sections assures that the real party in interest (who really suffers an injury from borrower's failure to pay) is known to the borrower. The Notice of Default at issue provides contact information for MERS as for current beneficiary. As no assignments of a Deed of Trust are recorded as of the date of this Complaint, it is not clear who the current assignee under the Deed of Trust might be and thus it is unclear who might be a true current beneficiary.

24. MERS is not and cannot be a true beneficiary or a party "entitled to payment of the money secured by the instrument." But even assuming for the sake of argument that the Deed of Trust assignments can somehow be established, if no proper chain of assignment of the Note can be demonstrated by showing an original fully and properly endorsed Note, no proper assignment of "the instrument intended to secure the payment of money" took place in any event.

25. It is a well established law that a secured promissory note traded on the secondary market remains secured only because and as long as the mortgage follows the note. Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security."). California codified this principle in 1872. Similarly, this has long been the law throughout the United States: when a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter" *Carpenter v. Longan*, 83 U.S. 271, 275 (1872). Clearly, the objective of that principle is "to keep the obligation and the mortgage in the same hands unless the parties wish to separate them." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 (1997). **Defendants are believed not to be the current holders of the Note at issue** and, based on the foregoing, Homeowner alleges on information and belief that no Note was deposited with Recontrust entities, despite the statement in the Notices of Default that such "all documents, evidencing obligations secured thereby" were deposited.

26. The conclusion follows, that the power of sale may not be exercised by any of defendants since they are not true holders of the Note and did not comply with California Civil

-8-
SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Code recording and non-judicial sale requirements.  Thus the foreclosure sale proceedings have to be stopped and set aside.

## IV.
## SECOND CAUSE OF ACTION – TO QUITE TITLE
### (Against Defendants BAC and MERS)

27.    Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

28.    To state a claim for quiet title, a complaint must include (1) a "legal description [of the property] and its street address or common designation, if any," (2) the title of the plaintiff and the basis of the title, (3) "[t]he adverse claims to the title of the plaintiff," (4) "[t]he date as of which the determination is sought," and (5) "[a] prayer for the determination of the title of the plaintiff against the adverse claims." Cal. Civ. Pro. Code § 761.020. The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970).

29.  Homeowner is the owner of record of the Property, the legal description of which is attached hereto as **Exhibit A.**

30.  The above-indicated Defendants have asserted claims to the Property by filing Notices of Default and Sale and by asserting their right and intent to conduct the foreclosure sale.

31.  Homeowner believes that Defendants have long sold, transferred and assigned all of their rights to the Property as the mortgage at issue was transferred prior to being pooled and securitized with other mortgages and the beneficiary interests in the resulting trust were subsequently sold on the open market.  The current beneficiaries under the Note are believed to be certain unidentified investors.  As Defendant BAC failed to respond to Homeowner's QWR, Homeowner is unaware of the name of the current beneficiary under her Note.

32.    Defendant BAC cannot lawfully claim ownership of the Note and mortgage at issue after it has been sold/transferred for securitization on the open market.  Defendant MERS is judicially estopped from claiming beneficiary status after it initiated *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Finance*, 270 Neb. 529, 704 N.W.2d 784 case in which it disclaimed such status.  See also *In re Vargas*, 396 B.R. 511, 516-17 (Bankr. C.D. California 2008)) and *In re Mitchell,* No. 07-16226-LBR, 2009 WL 1044368 (Bankr. N.D

Nev. 2008) decisions addressing why MERS cannot be a beneficiary under the notes[2].

33.     Homeowner is seeking to quiet title against the Defendants, and each of them, as of the date of filing of the Complaint and a judicial declaration that the title to the Property is vested in  Homeowner alone and that: (1) Defendants, and each of them, be declared to have no estate, right, title, or interest in the Property and (2) said Defendants, and each of them, be forever enjoined from asserting any right, title, or interest in the Property, adverse to Homeowner herein.

**V.**
**THIRD CAUSE OF ACTION –**
**BASED ON VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURE ACT**
**(Against Defendant BAC)**

34.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

35.     Upon knowledge and belief, Defendants violated the RESPA by, among other things, accepting fees, kickbacks or other things of value from the other Defendants pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred to other Defendants, in violation of 12 U.S.C. § 2607(a) and 24 C.F. R. § 3500.14(b).  Giving or accepting a portion, split, or percentage of charges made or received for the rendering of real estate settlement services in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

36.     Defendant BAC failed to respond to Homeowner's QWR that was sent by Homeowner to BAC on or about July 20, 2009.  Defendant BAC had a statutory obligation to

---

[2] Just a few additional recent rulings on the issue:

*In re Jacobsen, 2009 WL 567188 (Bankr. W.D. Wash. 2009)* (denying motion for stay relief because movant had not established either identity of holder of note or movant's authority to act on behalf of that party).

*In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. 2008)* (servicer not real party in interest for purposes of pursuing motion for relief from stay)

*In re Nosek, 386 B.R. 374 (Bankr. D. Mass. 2008)* (imposing monetary sanctions on Ameriquest, Wells Fargo, and several attorneys for misrepresenting the holder of the note)

*In re Hayes, 393 B.R. 259 (Bankr. D. Mass. 2008)* (denying motion for relief from stay when mortgagee failed to show proper chain of title from loan originator)

*In re Prevo, 394 B.R. 847 (Bankr. S.D. Tex. 2008)* (filing claim without supporting documents required by Rule 3001 "Proof of Claim", resulted in loss of prima facie validity)

*Wells Fargo v. Byrd, 897 N.E.2d 722 (Ohio Ct. App., Sept. 12, 2008)* (upholding dismissal of foreclosure action because Wells Fargo was not owner of mortgage but ruling that dismissal should have been without prejudice)

*In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007) (J. Rose)* (lack of standing/proof of ownership of mortgage)

*In re Foreclosure Cases, 07CV2282, 2007 WL 3232430 (N.D. Ohio. Oct. 31, 2007) (J. Boyko)* (lack of standing/proof of ownership of mortgage)

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

acknowledge the receipt of the QWR within 20 business days and provide the information that was requested in the QWR within 60 business days after the receipt of the QWR.  This has not been done, which is especially noteworthy in the context of the ongoing litigation.  As a result, Homeowner is still unable to confirm the name of the current beneficiary under her Note or ascertain the facts required to allege the exact nature of the fees that were charged to her account after she executed the Deed in Lieu on October 22, 2007.

37.     Defendant BAC violated its statutory obligations and engaged in inequitable conduct in refusing to provide Homeowner with the requested information and copies of requested documents and obscuring the identity of the current holder of the Note.

38.     As a proximate result of these violations of RESPA, Defendant is liable to Homeowner for statutory monetary damages in the amounts to be determined at trial and costs under 12 U.S.C. § 2607(d) (5).   Homeowner further requests this Court's determination and order that would obligate Defendant BAC to comply with its RESPA obligation and provide response to the Homeowner's QWR.

## VI.
## FORTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ
### (Against All Defendants)

39.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

40.     Business and Professional Code, § 17200 authorizes a private right of action for "any practices forbidden by law be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  It is not necessary that the predicate law provide for private civil enforcement.  Section 17200 borrows violations of other laws and treats them as unlawful practices independently actionable.  "Unfair" simply means any practice whose harm to the victim outweighs its benefits.  "Fraudulent," as used in the statute, does not refer to the common law tort of fraud, but only requires a showing members of the public are likely to be deceived."  *Saunders v Superior Court*, 27 Cal.App. 4th 832 (1994).

41.     Homeowner alleges that the statutory violations and unlawful, unfair and fraudulent practices and acts of Defendants, and each of them, aforementioned in this Complaint, constitute unlawful business acts and/or practices within the meaning of California Business and Professions

Code § 17200 et seq.  In particular, Defendants MERS and BAC violated a number of California non-judicial sale and recording requirements, as discussed in more detail under the Wrongful Foreclosure Cause of Action above, in particular, by concealing the name of the new beneficiary under the note (some trustee acting on behalf of unknown investors) and even the very fact that the Note was sold to investors on the secondary market.  Defendants BAC and MERS proceeded with the two (!) foreclosure sales, ruining Homeowner's credit history and life along the way, when she was at first even unaware that she had any outstanding obligations and still owned the Property and later specifically requested investigation of this issue.

42.      Defendants further compounded the problem by their refusal to investigate the fact that Homeowner already executed the Deed in Lieu, consider any reasonable loan modifications prior to the filing of this legal action (whether any reasonable loan modifications will be achieved as a result and over the course of this litigation remains to be seen).  In effect, Homeowner was directed to contact and contacted the wrong party which not only had no interest in pursuing any loan modifications but was potentially not even authorized to do such loan modifications by the investors.  All Defendant BAC was in fact interested in is to continue charging fees to Homeowner's account, quite illegally so.  By doing this, Defendants clearly engaged and continue to engage in unlawful business practices.   More details on all these violations will be hopefully revealed thorough the discovery process.

43.      Homeowner alleges that by engaging in the above-described acts and/or practices as alleged herein, Defendants have violated a number of laws and regulations and said predicate acts are therefore per se violations of § 17200, et seq.

44.      Homeowner alleges that Defendants' misconduct, as alleged at length herein, gave, and have given, Defendants an unfair competitive advantage over their competitors.

45.      As a direct and proximate result of Defendant's unlawful conduct alleged herein, Homeowner (and other similarly situated potential plaintiffs) is in danger of losing the Property and has suffered injury in fact, including without limitation, increased finance charges, excessive loan expenses and interest rates, loss of other credit opportunities, damage to Homeowner's credit history, and other costs.

46.      Homeowner alleges that Homeowner is entitled to equitable relief, including without limitation restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and deceptive practices and acts, attorney's fees and costs, declaratory relief, and a

permanent injunction enjoining Defendants from their unlawful activity.

## VII.
## FIFTH CAUSE OF ACTION – FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendants BAC and MERS)

47.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

48.     The actions of Defendants, and each of them, as set forth herein, have resulted in a huge confusion, overcharges on the account, subjected her to daily telephone demands to return the money she purportedly owned.  On top of everything else, Homeowner is now being faced with the second foreclosure proceedings on the Property.  This possibility has been created without any right or privilege on the part of Defendants and, as such, their actions constitute outrageous or reckless conduct.

49.     Defendants, and each of them, committed the acts set forth above with complete, utter and reckless disregard of the probability of causing Homeowner to suffer severe or extreme emotional distress.

50.     The acts of Defendants, and each of them, have resulted in Homeowner suffering severe or extreme emotional distress.

51.     The outrageous conduct of Defendants, and each of them, was by no stretch of the imagination privileged, and is the actual and proximate cause of the severe or emotional distress suffered by Homeowner.

52.     The conduct of Defendants, and each of them, as herein described supra and infra, was so vile, base, contemptible, miserable, wretched and loathsome that it would be looked down upon and despised by ordinary people.  Homeowner is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

## VIII.
## SIXTH CAUSE OF ACTION – TO VOID CONTRACT
### (Against all Defendants)

53.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

54.     Homeowner alleges, as set forth, supra, that the Deed included terms which were inconsistent with a Deed of Trust and, as such, the nature of the document which was represented

to Homeowner as a Deed of Trust was not, in fact, a Deed of Trust.  Accordingly, the Deed of Trust was void at its inception.

55.     Homeowner alleges that the Note, in that material terms of such document were concealed in documents other than the Note or identified as Addenda thereto was not, in fact, a Note as it did not recite all of Homeowner's obligations as to payments.  Accordingly, the Note was void at its inception.

56.     Homeowner is, therefore, entitled to an order finding and holding the Note and Deed of Trust are and were void ab initio and are of no legal force and effect.

**IX.**

**SEVENTH CAUSE OF ACTION – TO VOID AND CANCEL DEED OF TRUST**
**(Against All Defendants)**

57.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

58.     Homeowner is the fee owner of the Property.

59.     BAC, MERS and one or more of the Doe defendants are named as or claim to be parties to the Deed of Trust which, per their express terms, secure the loan.

60.     The Deed of Trust constituted a contract by which Homeowner, without her knowledge or informed consent, permitted MERS, an unregistered in California corporation which, to serve as a purported "straw" beneficiary of the Deed of Trust despite the fact it was not a party to the loan.

61.     The Deed of Trust is both void and voidable because the specific terms of the Deed were inconsistent with the nature of a Deed of Trust, as set forth more fully, above and Homeowner was fraudulently induced into entering into and making payments called for in the loan by the defendants named herein and one or more of the Doe defendants.

62.     Homeowner is therefore entitled to have the Deed of Trust adjudged void and without legal force or effect as it is a legal nullity and an order issued so finding and holding.

**X.**

**EIGTH CAUSE OF ACTION – FOR VIOLATION OF CALIFORNIA CIVIL**
**CODE SECTION 2923.5**
**(Against BAC and Does 1 -100)**

63.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

-14-

64.     California Civil Code section 2923.5 became effective in September 2008.  The statute required on its effective date that prior to conducting a trustee's sale on any property against which a notice of default had already been filed, any party claiming to be a beneficiary under a deed of trust which was the basis for the filing of a notice of default first at least attempt to negotiate with the Trustor for the purpose of trying to keep the Trustor in possession of any related real property.

65.     To date, defendant BAC has made any attempts to comply with section 2923.5 in spite of the statement made in declaration attached to the second Notice of Default to the contrary, which statement is nothing more than a misrepresentation of fact.

66.     Accordingly, any sale of the Property that might be schedules is contrary to the laws of the State of California and an order should be issued by the Court so holding and further ordering defendants to cease and desist from any efforts to conclude their unlawful sale and to immediately comply with section 2923.5.

## XI.

### NINTH CAUSE OF ACTION

### FOR UNFAIR DEBT COLLECTION PRACTICES

### (Against Defendant MERS)

67.     Homeowner hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

68.     Homeowner is informed and believes and thereon alleges that Defendant MERS acting as debt collector on behalf of unknown Defendants Does 1-100, in the taking of herein-discussed actions, has violated provisions of California's Rosental Fair Debt Collection Practices Act, including without limitation, Section 1788(e) and (f) of the California Civil Code, and the Federal Fair Debt Collection Act, 15 U.S.C. Title 41, Subchap. V Sections 1692 et seq.

69.     In particular, Defendant caused significant damage to Homeowner's credit history, by continuing reporting past due payments even though Homeowner has long agreed to transfer title and all her rights to the Property to Defendant BAC.  Homeowner alleges that all reports after such time were false reports as they were done first without informing Homeowner about her potential continuing obligations under the loan, which she thought she no longer had, and later in spite of her specific dispute of such obligations that Defendant failed to properly investigate.  Defendant further damaged Homeowner's credit history by twice initiating the foreclosure

-15-

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

proceedings against the Property, first time without even providing Homeowner with the notice of the same and second time ignoring her specific dispute of any continuing obligations.

70.     In addition, Defendant caused Homeowner be inundated with numerous and repeated computerized and other debt collection calls, which greatly affected Homeowner's everyday life and became a real nuisance.  That was done in spite of the fact that Homeowner repeatedly made clear that she already executed the Deed in Lieu and after she specifically requested investigation of the issue prior to continuation of any collection activities and after she specifically disputed the amounts claimed due under the Note.  Defendant MERS caused the second NOD recorded through its agent Recontrust and proceeded with the foreclosure process without proper investigation of the status of the loan.

71.     Last, but not least, Defendant MERS violated the Rosental Act by falsely stating the amounts of a debt by including the amounts that are not permitted by law or contract, in particular including in the amounts that Homeowner was allegedly responsible for after she already executed the Deed in Lieu and was in no way advised she might ever be responsible for.

72.     Homeowner alleges that in light of the above-stated statutory violations, a Court order must be issued enjoining Defendant from proceeding with the alleged collection activities on the loan in violation of the federal and state law referred to above.  Homeowner further alleges that she is entitled to statutory damages, costs and attorney's fees.

**XII.**

**PRAY FOR DECLARATORY AND INJUNCTIVE RELIEF**

73.     The allegations made by Homeowner, above, establish that a real and present controversy exists as to the respective rights of the parties to this matter including right, title and interests in and to the Property.

74.     Homeowner has alleged that Reconstruct entities are not the trustee of the "current beneficiary" and that, in fact, the "current beneficiary" is an unascertained person particularly in view of the actual documents claiming to substitute various parties as trustee, none of which were executed by any actual beneficiary of the deed.

75.     Homeowner hereby alleges that Defendants MERS and BAC are not the holder of the Note in due course as would be required pursuant to the provisions of Article 3 or 9 of the California Commercial Code to enforce the Note.

76.     Since Defendants BAC and MERS are not the holder in due course of the Note, no

-16-

such defendant has authority, pursuant to California Civil Code Section 2924(a) (1)(C), to state a default exists under the Note or the Deed of Trust which purportedly secures such Note.

77.     Further, in that Homeowner has alleged the purported Deed of Trust he signed was void ab initio the recordation of the Deed of Trust impugns Homeowner's title in and to the Property.

78.     Accordingly, Homeowner requests the court make a finding and issue appropriate orders stating that none of the named defendants, at the time of the recordation of the notice of default, has or has any right, title or interest in the Note, Deed of Trust or the Property which authorized them, in fact or as a matter of law, to record such instruments.

WHEREFORE, Homeowner prays for judgment against Defendants, and each of them, as follows:

1.     That the Notice of Default and the Notice of Sale be deemed invalid and set aside;

2.     Defendant BAC and MERS, and each of them, be declared to have no estate, right, title, or interest in the Property;

3.     That the foreclosure or attempted foreclosure of Property be deemed illegal and void and the same be first temporary and then permanently enjoined;

4.     That the Court orders compliance with Cal. Civ. Code Section 2923.5 requirements.

5.     That Defendants' actions be determined to be unfair and deceptive business practices in violation of California law and that the Court award all such relief to Homeowner as Homeowner may be entitled, including treble damages and an award of costs and attorney's fees;

6.     That a permanent injunction is issued precluding Defendants, and each of them, from engaging in the wrongful conduct identified herein;

7.     For compensatory damages estimated to be in excess of $100,000 to be ascertained and proven at trial;

8.     For punitive and exemplary damages against Defendants in a sum according to proof at trial;

9.     For  award of discussed-above statutory damages;

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

10.     For costs of suits and attorney's fees;

11.     For such other and further relief as this Court deems just and proper.

**JURY DEMAND**:

Homeowner hereby demands a trial by jury.

Dated: September 10, 2010

_____/s/ Oxana Kozlov, Esq._____
Attorney for Irene Anokhin

-18-
SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

**<u>VERIFICATION</u>**

2

I, Irene Anokhin, declare as follows:

3

4

1.      I am the plaintiff in the above-entitled action and have prepared the foregoing complaint.

5

2.      The facts stated in it are true of my own knowledge except as to those matters which are

6

stated on information and belief, and as to those matters I believe them to be true.

7

8

I declare under the penalty of perjury under the laws of the State of California that the foregoing is

9

true and correct and that this verification was executed this 10th day of September, 2010, in San

10

Diego, California.

11

12

_____/s/ Irene Anokhin_____

13

Irene Anokhin, Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1
**EXHIBIT A**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**EXHIBIT B**

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

**EXHIBIT C**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**EXHIBIT D**

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**EXHIBIT E**

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**EXHIBIT F**

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF